O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EZEKIEL RUBEN GARZA,<br><br>                     Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                     Defendant. | Case No. EDCV 15-02425-KES<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Ezekiel Ruben Garza ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying his application for Disability Insurance benefits (DIB). For the reasons discussed below, the ALJ's decision is AFFIRMED.

## I.

## BACKGROUND

Plaintiff applied for DIB on March 23, 2010, alleging the onset of disability on February 12, 2010. Administrative Record ("AR") 288-292. An ALJ conducted a hearing on October 4, 2011, at which Plaintiff, who was represented by an attorney, appeared and testified. AR 109-123. The ALJ published an unfavorable decision on November 25, 2011. AR 131-143. The Appeals Council reviewed the

1    ALJ's decision and remanded the case back to the ALJ to obtain additional medical

2    evidence, hear supplemental testimony from a vocational expert, and give further

3    consideration to Plaintiff's residual functional capacity ("RFC"). AR 148-50. The

4    ALJ conducted a second hearing on December 10, 2013, at which Plaintiff again

5    appeared and testified. AR 43, 44-59, 84-96. A medical expert who had reviewed

6    Plaintiff's records also testified as to the functional limitations caused by Plaintiff's

7    impairments. AR 59-83.

8        On March 25, 2014, the ALJ issued a written decision denying Plaintiff's

9    request for benefits. AR 16-33. The ALJ found that Plaintiff had the following

10   severe impairments: left femoral fracture, stabilized, with leg discrepancy of 2.5

11   inches; back condition with moderate disc protrusion; neck condition with mild

12   degenerative spondylosis; gastroesophageal reflux disease ("GERD"); slip and fall

13   injury to the left knee; and mild obesity. AR 21.

14       Notwithstanding his impairments, the ALJ concluded that Plaintiff had the

15   RFC to perform light work with the following additional limitations: lift and/or

16   carry up to twenty pounds occasionally and ten pounds frequently; sit up to six

17   hours in an eight-hour workday; stand and/or walk two hours in an eight-hour

18   workday with a custom-fitted left knee brace and shoe lift for the left foot, but only

19   for fifteen minutes at a time; limited to occasional bending, squatting, climbing, and

20   crawling, and frequent stooping and kneeling; cannot climb ladders or scaffolds or

21   work around dangerous heights; limited to occasional use of left lower extremity on

22   pedals; must use a cane if walking over fifteen feet or whenever he is on uneven

23   terrain, but can only occasionally walk on uneven terrain; must be able to lie down

24   during his lunch break; limited to simple, unskilled tasks (due to his medications);

25   must be able to stand and stretch for a minute every hour; and will miss work one

26   or two times per month. AR 22.

27       Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ

28   found that Plaintiff could not return to his past relevant work as a custodian, but

2

that he could find work as an electronics worker or small products assembler. AR 32. Therefore, the ALJ concluded that Plaintiff is not disabled. Id.

**II.**

**ISSUES PRESENTED**

Issue No. 1: Whether the ALJ properly evaluated the opinion of treating physician Keith Fu, M.D.

Issue No. 2: Whether the ALJ properly evaluated the opinion of examining physician Chirag N. Amin, M.D.

Issue No. 3: Whether the ALJ properly evaluated Plaintiff's testimony.

Joint Stipulation ("JS") at 5.

**III.**

**DISCUSSION**

**A.    ISSUES ONE AND TWO: The ALJ Gave Specific and Legitimate Reasons for Giving Dr. Fu's and Dr. Amin's Opinions Little Weight.**

**1.    Applicable Law.**

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither, but reviewed the plaintiff's medical records. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. Id.

When a treating or examining physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). When it is contradicted, the ALJ must provide "specific and legitimate reasons" for discounting it that are supported by substantial evidence. Id. (citation omitted).

1    The weight given a physician's opinion depends on whether it is consistent
2    with the record and accompanied by adequate explanation, the nature and extent of
3    the treatment relationship, and the doctor's specialty, among other things. 20
4    C.F.R. § 416.927(c)(3)-(6). Medical opinions that are inadequately explained or
5    lack supporting clinical or laboratory findings are entitled to less weight. See
6    Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (holding that ALJ properly
7    rejected physician's determination where it was "conclusory and unsubstantiated by
8    relevant medical documentation"); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir.
9    1996) (ALJ permissibly rejected "check-off reports that did not contain any
10   explanation of the bases of their conclusions").

11   The ALJ is responsible for resolving conflicts in the medical evidence,
12   Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). In doing so, the ALJ is
13   always permitted to employ "ordinary techniques" for evaluating credibility,
14   including inconsistencies in a witness's testimony. Thomas v. Barnhart, 278 F.3d
15   947, 958-59 (9th Cir. 2002). Thus, internal inconsistencies are a valid reason to
16   accord less weight to a medical opinion. See Connett v. Barnhart, 340 F.3d 871,
17   875 (9th Cir. 2003) (upholding inconsistency between a treating physician's
18   opinions and his own treatment notes as a reason to discount his opinions); Rollins
19   v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of a
20   medical opinion that was internally inconsistent); Gabor v. Barnhart, 221 F. App'x
21   548, 550 (9th Cir. 2007) ("The ALJ noted internal inconsistencies in Dr. Moran's
22   report, which provide a further basis for excluding that medical opinion.");
23   Gonzales v. Colvin, 2015 U.S. Dist. LEXIS 148471, at *12 (C.D. Cal. Oct. 30,
24   2015) (upholding ALJ's rejection of medical opinion assessing inconsistent social
25   functioning and GAF scores); Khan v. Colvin, 2014 U.S. Dist. LEXIS 86558, at
26   *22 (C.D. Cal. June 24, 2014) ("The ALJ's first reason for rejecting Dr. Multani's
27   opinion — to wit, that his opinion was internally inconsistent — is specific and
28   legitimate.").

4

**2.    The ALJ Gave Specific and Legitimate Reasons for Discounting the Opinions of Dr. Fu.**

a.    Summary of Dr. Fu's Opinions.

Dr. Fu treated Plaintiff from September 2009 to April 2013. AR 583. Throughout his tenure of primary care, Dr. Fu provided four opinions pertaining to Plaintiff's medical health. On September 30, 2010, Dr. Fu wrote a letter stating that Plaintiff has complained of knee pain for three years and has had two surgeries on his left knee.[1] AR 431. Dr. Fu stated that Plaintiff was referred to an orthopedic specialist in May 2010, and he opined that Plaintiff is "totally disabled" and may need knee replacement surgery. Id.

Dr. Fu also completed a "Multiple Impairment Questionnaire" on September 30, 2010, in which he diagnosed Plaintiff with left knee medial compartment osteoarthritis. AR 433. Dr. Fu opined that Plaintiff's prognosis was guarded, and identified the clinical findings of limited range of motion and decreased strength in the left knee. Id. Dr. Fu indicated that an x-ray and MRI of the left knee supported his diagnosis. AR 434. Dr. Fu explained that Plaintiff's bending and moving his left knee caused pain, which Dr. Fu estimated as moderate. AR 435. Dr. Fu stated that medication has not completely relieved Plaintiff's pain. Id.

In the Questionnaire, Dr. Fu opined that Plaintiff can sit for four hours and stand and/or walk for two hours; should not stand and/or walk continuously in a work setting; can frequently lift and carry ten to twenty pounds; and due to knee pain, would have significant limitations in repetitive reaching, handling, fingering, and lifting. AR 435-36. Dr. Fu noted moderate limitations regarding the use of

---

[1] The first surgery was in 1975, and was conducted as a result of a car accident in which Plaintiff was hit while riding his bicycle. AR 59, 112. The second was in 2011, and appears to have been conducted due to a ligament injury. See AR 474.

1   Plaintiff's bilateral upper extremities for grasping, twisting or turning objects. AR
2   436. Dr. Fu prescribed Plaintiff Naprosyn and Tylenol for his pain. AR 437. Dr. Fu
3   assessed that Plaintiff's pain, fatigue or other symptoms severely and frequently
4   interfere with his attention and concentration. AR 438. Dr. Fu also determined that
5   Plaintiff's impairments are likely to produce "good and bad days." AR 438-39.

6       On October 6, 2010, Dr. Fu completed an attending physician's statement
7   opining that Plaintiff can never return to work. AR 474. Dr. Fu diagnosed Plaintiff
8   with severe, chronic left knee pain. Id. Dr. Fu does not expect improvement, and he
9   characterized Plaintiff's disability as permanent. Id.

10      On August 29, 2011, Dr. Fu completed a standard form to an employer or
11  school stating that Plaintiff received treatment on that date. AR 494. Dr. Fu opined
12  that Plaintiff has been permanently disabled since April 2010. Id.

13      On December 9, 2013, Dr. Fu provided a letter identifying Plaintiff's severe
14  impairment of osteoarthritis of the medial compartment of the left knee. AR 583.
15  Dr. Fu stated that Plaintiff had a guarded prognosis due to Plaintiff's limited range
16  of motion and decreased strength in the left knee. Id. The primary symptom of
17  moderate-to-severe pain in the left knee was precipitated by bending and movement
18  of the joint. Id. Dr. Fu assessed the same RFC for Plaintiff that he noted in the
19  September 2010 Multiple Impairment Questionnaire. AR 583; see also AR 435-46.
20  Throughout his treatment of Plaintiff, Dr. Fu did not find any signs of malingering.
21  AR 583.

22          b.      The ALJ's Treatment of Dr. Fu's Opinions.

23      The ALJ gave little weight to Dr. Fu's opinions because they were not
24  supported by objective evidence and were inconsistent with the record as a whole.
25  AR 29. With regard to Dr. Fu's September 2010 letter and Multiple Impairment
26  Questionnaire, the ALJ found that Dr. Fu's clinical findings of limited range of
27  motion and decreased strength in the left knee did not support the extremity of Dr.
28  Fu's recommended limitation that Plaintiff could only sit for four hours. Id.

6

1    The ALJ also specifically rejected the opinion and RFC assessment in Dr.
2    Fu's December 2013 letter. AR 30. The ALJ noted that in formulating those
3    opinions, "Dr. Fu primarily summarized Plaintiff's subjective complaints,
4    diagnoses and treatment, but he did not provide objective clinical or diagnostic
5    findings to support the functional assessment." Id. The ALJ also found
6    inconsistencies in Dr. Fu's assessment, "such as indicating the assessment is a
7    summary of the [Plaintiff]'s left knee, but then assessing bilateral upper extremity
8    limitations." Id.

9    The ALJ also considered Dr. Fu's opinion regarding whether Plaintiff is
10   permanently disabled. AR 28, citing AR 474, 494. The ALJ found that Dr. Fu's
11   conclusion that Plaintiff is permanently disabled had no probative value. AR 28.
12   The ALJ noted that disability is an issue reserved to the Commissioner, and that Dr.
13   Fu's statements were not entitled to controlling weight or given special significance
14   pursuant to 20 C.F.R. 404.1527(e) and Social Security Ruling ("SSR") 96-5. AR
15   30.

16   Finally, the ALJ found that Dr. Fu's course of treatment, i.e., prescribing pain
17   management medication, "has not been consistent with what one would expect if
18   [Plaintiff] were truly disabled, as [Dr. Fu] has reported." AR 30. The ALJ noted
19   that when Plaintiff saw Dr. Fu in August 2010, Dr. Fu gave Plaintiff refills on his
20   medications and told him to return in three months. AR 25, citing 477. Plaintiff was
21   not treated again until January 31, 2011 — six months later — when Dr. Fu again
22   refilled his medications, advised him to lose weight, and told him to return in
23   another three months. AR 26, citing AR 476. His medications were simply refilled
24   again in August 2011. AR 26, citing 494.

25   The ALJ also discussed the opinions of three doctors that contradict Dr. Fu's
26   more restrictive opinions regarding Plaintiff's sitting and bilateral upper extremity
27   limitations.

28   The ALJ gave significant weight to Dr. Brown, an impartial medical expert

7

who testified at Plaintiff's December 2013 hearing. Dr. Brown testified that Plaintiff had the following medically determinable impairments: left femoral fracture, stabilized, with leg discrepancy of 2.5 inches; back condition with moderate disc protrusion; neck condition with mild degenerative spondylosis; GERD; slip and fall injury to the left knee; and mild obesity. AR 27, citing AR 59-67. Dr. Brown assessed Plaintiff's limitations as follows: can lift and/or carry up to twenty pounds occasionally and ten pounds frequently; can sit up to six hours in an eight-hour workday; can stand and/or walk four hours in an eight-hour workday with a custom fitted left knee brace and shoe lift for the left foot, in two hour intervals; limited to occasional bending, squatting climbing, and crawling, and frequent stooping and kneeling; cannot climb adders and scaffolds or work around dangerous heights; limited to occasional use of left lower extremity on pedals; must use a cane if walking over fifteen feet and whenever he is on uneven terrain, but he can only occasionally walk on uneven terrain; and that Plaintiff would not be expected to be absent from work unless he undergoes surgical intervention. AR 28, citing AR 70-73.

Dr. Brown testified that he noticed discrepancies between Plaintiff's treating physicians regarding whether he was a candidate for knee replacement surgery and the severity of Plaintiff's left knee condition. AR 27, citing AR 61. He noted that Plaintiff may need an alignment of the joints to counter his balance problems due to his leg length discrepancy. AR 62. Dr. Brown opined that the medical evidence did not support the finding that Plaintiff's impairments would impede the use of Plaintiff's hands for grasping, fine manipulation or fingering. AR 72.

The ALJ gave some weight to the opinion of the State agency medical consultant, Dr. Laiken. AR 29. After reviewing Plaintiff's medical records, Dr. Laiken's RFC assessment was slightly less restrictive that the ALJ's RFC. See AR 22, AR 422-27. He generally found that Plaintiff could perform at a sedentary RFC level. AR 427. As relevant here, Dr. Laiken opined that Plaintiff could sit for up to

1  six hours and stand and/or walk for two hours in an eight-hour work day. AR 422.

2  He assessed no manipulative limitations. AR 423.

3      The ALJ considered but did not give significant weight to the opinion of

4  examining physician Dr. Moazzaz. AR 25. Dr. Moazzaz's examination of Plaintiff

5  found decreased range of motion of the lumbar spine and tenderness over the

6  medial joint line of the left knee. AR 553-54. However, the physical examination

7  was otherwise normal, and neurological examination found normal motor strength,

8  sensation, and reflexes. AR 554. Dr. Moazzaz diagnosed Plaintiff with left knee

9  degenerative joint disease, cervical degenerative disc disease, and lumbar stenosis,

10 and he opined that Plaintiff could perform essentially light-level work activity. AR

11 555. As relevant here, he opined that Plaintiff could sit for six hours in a workday

12 and did not require the use of an assistive ambulatory device. Id. While Dr.

13 Moazzaz opined that Plaintiff was limited to reaching overhead only frequently, he

14 found no limitations relating to the use of Plaintiff's hands for fine and gross

15 manipulative movements. AR 555, 559. The ALJ ultimately determined that Dr.

16 Brown's more restrictive assessments were more consistent with the objective

17 clinical and diagnostic findings in the record than those of Dr. Moazzaz. AR 29.

18         c.    Analysis.

19             1.    Dr. Fu's RFC Assessments.

20     Plaintiff argues that the ALJ's rejection of Dr. Fu's September 2010 findings

21 did not reach the level of specificity required to discount the opinions of a treating

22 physician. JS at 9. Plaintiff also argues that the ALJ's rejection of Dr. Fu's

23 December 2013 assessment was in error, because the stated reasons are not

24 supported by substantial evidence. The Court disagrees.

25     The ALJ properly discredited Dr. Fu's September 2010 assessment because

26 Dr. Fu's limitations were extreme in light of his findings. Dr. Fu assessed Plaintiff

27 with chronic left knee pain, causing a limited range of motion and decreased

28 strength. AR 431, 433. The ALJ properly concluded that a limited range of motion

1   and decreased knee strength do not support limitations regarding the length of time

2   Plaintiff can sit or the ability to use his arms and hands.

3        Plaintiff defends Dr. Fu's opinion because "the knee joint is activated when

4   sitting" and Dr. Fu once saw Plaintiff for tenderness and swelling of the left fourth

5   finger in June 2010. JS at 9-10, 12, citing AR 478. However, Dr. Fu never stated

6   that he limited Plaintiff's sitting because sitting "activated" his knee joint, nor did

7   he claim that he restricted Plaintiff's use of his right and left upper extremities due

8   to a single instance of tenderness and swelling in one finger on Plaintiff's left hand.

9   Rather, Dr. Fu stated that he found Plaintiff unable to sit for over four hours simply

10  because of pain in his left knee. See AR 433-36. Additionally, as the ALJ noted, Dr.

11  Fu's finding of knee pain has no logical relation to Plaintiff's ability to perform fine

12  or gross manipulative functions with his hands. Likewise, the act of sitting for an

13  extended period of time does not necessarily implicate the knee's range of motion

14  or strength.[2] Based on the explanations Dr. Fu provided to justify his RFC

15  assessment, the ALJ was correct in finding his opinion inconsistent.

16       Plaintiff also contends that the ALJ's rejection of Dr. Fu's December 2013

17  opinion was in error. Plaintiff claims that the ALJ's decision to discredit that

18  opinion because it was based primarily based on Plaintiff's subjective complaints

19  was an incorrect assessment. Plaintiff argues that Dr. Fu's December 2013 opinion

20  was substantially supported by the following objective evidence:

21       On November 9, 2009, examination revealed no swelling of the left

22       knee, but positive tenderness. AR 387. On December 18, 2009, Dr. Fu

23       identified a decreased range of motion of the left knee with no knee

24  ────────────────

    [2] Sitting for an extended period of time should be distinguished from the act

25  of sitting down, which presumably does require one to bend and move the knee,
    two actions that Dr. Fu found precipitated Plaintiff's pain. AR 435. However, Dr.

26  Fu's RFC assessment limits how long Plaintiff can remain seated, not the number

27  of times Plaintiff can perform the act of sitting down.

28

swelling. AR 386. That same treatment note reported a review of an MRI dated November 2009. Id. On December 22, 2009, rheumatoid arthritis was ruled out. AR 418. On March 11, 2010, Dr. Fu ordered a leg length study which revealed a leg length discrepancy, left leg shorter than right. AR 389. On June 25, 2010, Plaintiff exhibited swelling and tenderness of the left fourth finger. AR 478. On August 6, 2010, physical examination revealed tenderness around the left knee and ambulating with a cane. AR 477. On January 31, 2011, Plaintiff was assessed as wearing a left knee brace with tenderness around the brace. AR 476.

JS at 11-12.

If a treating physician's opinions are based "to a large extent" on a claimant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion. Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008)).

Here, the ALJ properly noted that the *severity* of Dr. Fu's limitations conformed more closely to Plaintiff's subjective complaints than Dr. Fu's objective findings. The ALJ's RFC assessment incorporated a number of Dr. Fu's objective clinical findings that Plaintiff brings to the Court's attention. The ALJ noted Plaintiff's leg length discrepancy, included a limitation that he use a cane while walking more than fifteen feet or on uneven terrain, and found that Plaintiff could only stand/walk for fifteen minutes at a time and only for two hours in an eight-hour workday. These restrictions take into account most of Dr. Fu's treatment notes, with the exception of the single presentation of finger tenderness. What the ALJ did not do was extrapolate from the relatively minor objective findings of knee tenderness that Plaintiff was unable to sit for extended periods of time or use his arms, hands or fingers. Only Plaintiff's subjective complaints of pain could have

1   prompted such extreme limitations, in light of Dr. Fu's minor objective findings.

2          The ALJ thus discounted Dr. Fu's opinion in part because it was premised on

3   Plaintiff's own subjective complaints, which the ALJ had already properly

4   discounted (see below). This constitutes a specific, legitimate reason for rejecting

5   the opinion of a treating physician. Morgan v. Commission of Soc. Sec. Admin.,

6   169 F.3d 595, 602 (9th Cir. 1999), citing Fair v. Bowen, 885 F.2d 597, 602 (9th

7   Cir. 1989).

8                  2.      Inconsistency with Clinical Findings and Medical Record.

9          Inconsistency with the medical records as a whole or a doctor's own clinical

10  findings is a specific and legitimate reason to discount an examining physician's

11  opinions. 20 C.F.R. § 404-1527(c)(4) ("Generally, the more consistent an opinion is

12  with the record as a whole, the more weight we will give to that opinion.");

13  Chaudhry v. Astrue, 668 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept

14  the opinion of any physician … inadequately supported by clinical findings.")

15         As to the determination that Dr. Fu's opinions were internally inconsistent,

16  the ALJ did not err. As discussed above, left knee pain does not logically result in

17  bilateral upper extremity limitations, and Dr. Fu did not document any observation

18  or provide an explanation for finding that Plaintiff suffers from such limitations.

19  The ALJ was correct in using his common sense to determine that knee pain would

20  not reasonably result in a limitation to Plaintiff's fine manipulative functions.

21         With regard to the ALJ's finding of Dr. Fu's inconsistency with the medical

22  record as a whole, that determination is also supported by substantial evidence. As

23  summarized above, the record is replete with opinions from other doctors who

24  determined that Plaintiff is capable of sitting for six hours a day and performing

25  manipulative functions. Three doctors explicitly disagreed with Dr. Fu's sitting and

26  upper extremity limitations. See AR 70-73 (Dr. Brown); AR 422-23 (Dr. Laiken);

27  AR 555, 559 (Dr. Moazzaz).

28         Plaintiff argues that because the ALJ did not explicitly contrast the other

1   findings in the medical record with Dr. Fu's opinions, the ALJ did not sufficiently

2   discount Dr. Fu's opinions in light of the medical record as a whole. This is not a

3   fair reading of the ALJ's decision. The Court can infer from the ALJ's decision that

4   he reviewed the record as a whole and incorporated his previous discussion of

5   evidence in the medical record into his rejection of Dr. Fu's opinions. By saying

6   that (1) he found Dr. Fu's opinions inconsistent with the medical record as a whole

7   and (2) contrasting Dr. Fu's clinical findings concerning Plaintiff's knees with his

8   restrictive opinion regarding his upper bilateral extremities, the ALJ sufficiently

9   indicated that he discounted Dr. Fu's opinions, at least in part, due to their

10   inconsistency with the overall medical evidence. Thus, the ALJ did not err in giving

11   little weight to Dr. Fu's more restrictive RFC assessment.

12                              3.      Dr. Fu's Permanent Disability Opinion.

13         The ALJ is correct that a determination of a claimant's ultimate disability is

14   reserved to the Commissioner. 20 C.F.R. § 416.927(d); Thornsberry v. Colvin, 552

15   F. App'x 691, 692 (9th Cir. 2014) ("[A] doctor's opinion that a claimant is disabled

16   is not itself a medical opinion but an issue reserved exclusively for the

17   Commissioner.") (citing 20 C.F.R. § 416.927(d)(1)). Contrary to Plaintiff's

18   argument, the ALJ thoroughly discussed Dr. Fu's opinion and properly found it

19   non-controlling on the ultimate issue of disability. See Magallanes, 881 F.2d at 751.

20   Accordingly, the ALJ gave a specific and legitimate reason for discounting Dr. Fu's

21   finding of permanent disability.

22                              4.      Conservative Course of Treatment.

23         The ALJ did not err in finding that Dr. Fu's conservative course of treatment

24   did not support Dr. Fu's opinion. As the ALJ noted, Dr. Fu treated Plaintiff

25   infrequently and primarily with medications for pain management, and for all types

26   of medical complaints, including non-severe concerns. See AR 25-26, citing AR

27   476-77, 494. Plaintiff argues that Dr. Fu also referred Plaintiff to an orthopedic

28   surgeon, Dr. Biama. Dr. Biama opined that Plaintiff would need total knee

replacement surgery, but Plaintiff preferred to wait for surgery because the pain was bearable when Plaintiff was not working as a custodian. JS at 32, citing 399.

Dr. Fu's referral of Plaintiff to an orthopedic specialist does not have a tendency to show that Dr. Fu's treatment of Plaintiff was not conservative. What a different doctor recommended to treat Plaintiff's knee pain (treatment Plaintiff never obtained) is irrelevant to the ALJ's finding that Dr. Fu's treatment decisions were not consistent with Dr. Fu's finding of total disability.

The ALJ properly discounted Dr. Fu's opinion.

### 3. The ALJ Gave Specific and Legitimate Reasons for Discounting the Opinions of Dr. Amin.

a.    Summary of Dr. Amin's Opinions.

Plaintiff was evaluated by Dr. Amin on February 2, 2012. AR 496. Dr. Amin summarized Plaintiff's current complaints as severe low back pain, moderate to severe bilateral knee pain (left worse than right), fatigue, and depression. AR 497. Dr. Amin diagnosed Plaintiff with chronic lumbosacral sprain/strain secondary to knee; degenerative spondylosis, sacroiliitis, lumbar radiculitis; left knee deformity; leg length discrepancy; degenerative osteoarthritis of the right knee; obesity; and GERD. AR 497. Dr. Amin's observations included finding that Plaintiff is likely to experience difficulty performing several daily activities, such as cooking, cleaning, bathing, and paying bills (due to difficulty concentrating brought about by his medication's side effects). AR 501. Dr. Amin also opined that Plaintiff is "100% permanently disabled," incapable of attaining gainful employment, and unable to compete in the open labor market. AR 501. With regard to future treatment, Dr. Amin recommended monthly orthopedic and pain management re-evaluations, inflammatory/muscle relaxant medications, chiropractic treatment, and additional diagnostic testing to monitor for potential progressions. Id. Dr. Amin also noted that additional operative intervention to both of Plaintiff's knees and lower back may be required if his "symptoms significantly worsen and do not adequately

1  respond to conservative treatment measures." Id. Dr. Amin determined that Plaintiff
2  would need ongoing treatment for the rest of his life. Id.

3      Dr. Amin assessed Plaintiff's RFC as follows: sit for one to two hours and
4  stand and/or walk for thirty minutes; must get up and move around every twenty
5  minutes and unable to sit again for ten minutes; inability to stand/walk
6  continuously; occasionally lift up to ten pounds and carry up to twenty pounds;
7  marked lifting and reaching restrictions due to patient's chronic low back pain; fine
8  manipulation, handling, fingering restrictions due to difficulty concentrating
9  because of medication side effects; moderately limited to using arms for reaching;
10  minimally limited to grasping, turning, twisting objects and using fingers/hands for
11  fine manipulations; must be allowed to be absent from work more than three times
12  per month; must avoid heights; no pushing, pulling, kneeling, bending, or stooping.
13  AR 506-510.

14          b.    The ALJ's Treatment of Dr. Amin's Opinions.

15      The ALJ gave little weight to Dr. Amin's opinions. AR 30. The ALJ
16  discounted Dr. Amin's opinion that Plaintiff is incapable of attaining gainful
17  employment and is permanently disabled as conclusory and on a matter reserved to
18  the Commissioner. Id. The ALJ also discounted Dr. Amin's opinion because Dr.
19  Amin had only seen Plaintiff once and was "presumably paid for his report at the
20  referral of the [Plaintiff]'s representative." Id. Lastly, the ALJ found that Dr.
21  Amin's opinion was without substantial support from the other evidence of record,
22  "which obviously renders it less persuasive." Id.

23          c.    Analysis.

24              1.    Dr. Amin Evaluated Plaintiff Only Once.

25      It is well established that the opinions of physicians who examine claimants
26  only once may be given less weight than those of treating physicians. See Benecke
27  v. Barnhart, 379 F.3d 587, 592 (9th Cir. 2004) (citing Lester, 801 F.3d at 830; 20
28  C.F.R. § 404.1527). In giving less weight to Dr. Amin, the ALJ was simply

15

1  pointing out that Dr. Amin was not a treating physician, but a one-time examiner

2  who could not provide a longitudinal perspective on Plaintiff's condition. This was

3  a valid basis to downgrade Dr. Amin's opinions.

4                      2.       Opinion Solicited by Counsel.

5        Plaintiff contends that the ALJ improperly considered the fact that Dr.

6  Amin's opinion was solicited by counsel. JS at 21. The Ninth Circuit, however, has

7  repeatedly held that an ALJ may reject a physician's opinion for having been

8  solicited by counsel, so long as that is not the sole reason. See Burkhart v. Bowen,

9  856 F.2d 1335, 1339 (9th Cir. 1988) (ALJ's comment that physician letter had been

10  solicited by the claimant's counsel "was not only a permissible credibility

11  determination given the evidence before the ALJ, it was also not the only reason the

12  ALJ gave for rejecting [the doctor's] statements"); Saelee v. Chater, 94 F.3d 520,

13  523 (9th Cir. 1996) ("ALJ's conclusion that [the physician's] solicited report was

14  untrustworthy was a permissible credibility determination" because the ALJ stated

15  that it was "worded in such a way that it strikes [him] as an effort … to assist a

16  patient even though there is no objective medical basis for the opinion") (internal

17  punctuation omitted)); Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998)

18  (approving Burkhart and Saelee and clarifying that "*in the absence* of other

19  evidence to undermine the credibility of a medical report, the purpose for which the

20  report was obtained does not provide a legitimate basis for rejecting it") (emphasis

21  added)); Curtin v. Colvin, 2016 U.S. Dist. LEXIS 61973, at *26 (C.D. Cal. May 9,

22  2016) ("the ALJ cited other evidence that undermined the credibility of Dr.

23  McDonough's opinion, and therefore his questioning of the purpose behind his

24  report was not improper" (citing Reddick, 157 F.3d at 726, accord Case v. Astrue,

25  425 Fed. App'x 565, 566 (9th Cir. 2011)).

26        Because the ALJ did not rely on this reason as the sole basis to find Dr.

27  Amin's opinions less credible, Plaintiff's objection lacks merit.

28                    3.       No Substantial Support from Other Evidence in the

1    Record.

2          While Dr. Amin did identify some support for his opinion, <u>see</u> JS at 22-24,

3    his conclusions were contrary to most of the other medical opinions that were given

4    weight by the ALJ. Dr. Brown and Dr. Moazzaz reviewed evidence not in existence

5    at the time of Dr. Amin's examination, including (1) a July 2012 MRI of Plaintiff's

6    left knee, which both doctors described as revealing only moderate degenerative

7    changes, and (2) August 2012 MRIs of Plaintiff's spine, which both doctors

8    described as revealing only mild-to-moderate degenerative changes. AR 63-64, 74-

9    75, 522-27, 551. Neither doctor, taking into consideration this additional

10   information, saw evidence to support limitations as extreme as Dr. Amin's.

11         Indeed, even Dr. Fu's opinions were less restrictive than Dr. Amin's. In his

12   September 2010 questionnaire and December 2013 letter, Dr. Fu indicated that

13   Plaintiff was more limited than the ALJ's assessment of his RFC only with respect

14   to how long he could sit and his ability to engage in manipulative activities with his

15   upper extremities. AR 22, 435-37, 583. By comparison, Dr. Amin believed Plaintiff

16   could only sit for one to two hours, stand and/or walk for thirty minutes, and

17   required breaks every twenty minutes for about ten minutes each. AR 506. In other

18   words, Dr. Amin opined that Plaintiff would need to be off-task one-third of the

19   time due to knee pain and related conditions. Accordingly, the ALJ properly

20   observed that Dr. Amin's opinion was contrary to the weight of the medical

21   evidence. As the "final arbiter" of the medical evidence, the ALJ was entitled to

22   accept the mostly consistent opinions of other doctors on record rather than Dr.

23   Amin's outlying opinion. <u>Tommasetti</u>, 533 F.3d at 1041 (9th Cir. 2008) ("[T]he

24   ALJ is the final arbiter with respect to resolving ambiguities in the medical

25   evidence.")

26         The ALJ properly discounted Dr. Amin's opinion.

27

28

**B.     ISSUE THREE: The ALJ Properly Evaluated Plaintiff's Testimony.**

**1.     Applicable Law.**

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingerfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834; Ghanim, 763 F.3d at 1163 & n.9. The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his

1  credibility analysis." <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005).

2      The ALJ may also use ordinary techniques of credibility evaluation, such as

3  considering the claimant's reputation for lying and inconsistencies in his statements

4  or between his statements and his conduct. <u>Smolen</u>, 80 F.3d at 1284; <u>Thomas</u>, 278

5  F.3d at 958-59.[3]

6      **2.      Plaintiff's Testimony.**

7      Plaintiff testified at hearings before the ALJ in October 2011 and December

8  2013. AR 83-95, 110-125. Plaintiff testified that he had two previous surgeries on

9  his left knee, and he is still considering total knee replacement surgery. AR 55, 57.

10  He also described having back and hip pain. AR 114. He indicated that his

11  condition has gradually gotten worse and has had to use more medication to assist

12  with his pain. AR 47-48, 84. He testified that he feels "loopy" when he takes his

13  medication, and that his medication makes him forgetful and causes him to lose

14  focus. AR 89, 91, 116. He testified that he can sit still for only fifteen to thirty

15  minutes before pain forces him to change positions and take more medication. AR

16  87. He claimed that he could not stand and/or walk for four hours in an eight-hour

17  workday because the pressure on his hip and knee takes a toll on his energy. AR 84.

18      Plaintiff testified that he needs a cane to balance and to reduce the pressure

19  on his right side, which is forced to compensate for his inability to put weight on

20  his left knee. AR 85, 91. He alleged that walking any more than fifteen to twenty

21  minutes causes him so much pain that he is required to take pain medication and lie

22  _____

23  [3] The Social Security Administration ("SSA") recently published SSR 16-3p,
2016 SSR LEXIS 4, Policy Interpretation Ruling Titles II and XVI: Evaluation of

24  Symptoms in Disability Claims. SSR 16-3p eliminates use of the term "credibility"
from SSA policy, as the SSA's regulations do not use this term, and clarifies that

25  subjective symptom evaluation is not an examination of a claimant's character.
<u>Murphy v. Comm'r of Soc. Sec.</u>, 2016 U.S. Dist. LEXIS 65189, at *25-26 n.6 (E.D.

26  Tenn. May 18, 2016). SSR 16-3p took effect on March 16, 2016, and therefore is

27  not applicable to the ALJ's decision in this case. <u>Id.</u>

28

1    down. AR 84. He testified that he can only lift approximately five to ten pounds

2    because anything more than that places too much pressure on his hip and pelvic

3    area. AR 85.

4         Plaintiff testified that he spends most of his day, approximately all but two

5    hours, in bed propped up with pillows, but he does not sleep well because he cannot

6    put pressure on his right hip or left knee. AR 88-90. Plaintiff testified that pain

7    wakes him up consistently, forcing him to change positions every ten to fifteen

8    minutes. AR 90. Plaintiff testified that even when lying down, he is constantly

9    readjusting himself every five minutes due to his back, hip, and knee pain. Id.

10        Plaintiff also testified that he lives with his parents, and the only household

11   chores he performs are basic cooking and doing his laundry. AR 84, 93. He can

12   only cook processed, microwaveable dishes because he cannot stand on the hard

13   floor of his kitchen for an extended period of time. AR 87. Plaintiff testified that he

14   can carry his laundry basket, weighing five to ten pounds, down the hall by

15   supporting himself against the wall as he walks. AR 91. Plaintiff also testified that

16   he usually forgets to complete these tasks because of his medication's side effects.

17   AR 88-89.

18        **3.    The ALJ's Treatment of Plaintiff's Credibility.**

19        The ALJ found Plaintiff to be partially credible "because he has some

20   limitations, but not to the extent he is unable to perform all basic work-related

21   activities." AR 23. The ALJ determined that the medical record does not support

22   the intensity, persistence, and limiting effects of the symptoms that Plaintiff

23   alleged. AR 24.

24        The ALJ discounted Plaintiff's description of the limitations on his daily

25   activities, stating that the "allegedly limited daily activities cannot be objectively

26   verified with any reasonable degree of certainty" and that "it is difficult to attribute

27   that degree of limitations to the [Plaintiff]'s medical condition, as opposed to other

28   reasons, in view of the relatively weak medical evidence." AR 24.

Further, the ALJ found inconsistencies in Plaintiff's description of the severity of his pain. Plaintiff testified to a long history of pain that has continued to worsen since the onset date of February 2010. However, in a March 2010 appointment with Dr. Biama, Plaintiff reported having unchanged symptoms and could walk without an assistive device. AR 24, citing AR 399-401. In April 2010, Plaintiff reported to Dr. Biama that his pain was less severe at the time. Id.

The ALJ also found that although Plaintiff alleged difficulty focusing and forgetfulness, the ALJ's observations of Plaintiff during the two-hour hearing did not support the alleged severity of these symptoms. AR 24. The ALJ found that Plaintiff "did not demonstrate or manifest any difficulty focusing during the hearing. During the time when [Plaintiff] was being questioned, [he] appeared to process the questions without difficulty, and to respond to the questions appropriately and without delay." Id.

The ALJ also noted that he reviewed Plaintiff's complete medical record, and found that "the credibility of [Plaintiff]'s allegations regarding the severity of his symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record." Id. The ALJ further noted that the medical evidence indicated that Plaintiff received conservative treatment for his complaints. Id.

**4.    Analysis.**

a.    Conservative Treatment.

An ALJ may consider evidence of conservative treatment in discounting testimony regarding the severity of an impairment. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). "Infrequent, conservative treatment is not indicative of a disabling impairment." Jimenez v. Colvin, 2013 U.S. Dist. LEXIS 88614, at *14 (C.D. Cal. June 24, 2013) (upholding ALJ's determination that treatment "consisting of Tamadol and over-the-counter Motrin" was conservative); see also Johnson, 60 F.3d at 1434 (conservative treatment suggests a lower level of both

1   pain and functional limitation).

2   Plaintiff argues that the medical record with regard to treatment is consistent

3   with Plaintiff's subjective complaints. JS at 32. He notes that in 2010, Dr. Biama

4   found that Plaintiff needed knee replacement surgery. Id., citing AR 399. While

5   Plaintiff refused surgery at the time, he testified that he was still considering the

6   procedure. AR 57-58.

7   Plaintiff gave a number of reasons why he initially refused to have knee

8   replacement surgery, and why he is still considering his options. In April 2010,

9   Plaintiff declined Dr. Biama's recommendation that he have knee replacement

10  surgery because he wanted to "wait as long as he can until the pain is unbearable."

11  AR 395. He noted that the pain was bearable at the time because he was not

12  working as a custodian. AR 394, 399. There is no evidence that Plaintiff returned

13  for further treatment with Dr. Biama after refusing surgery. See AR 25. Rather,

14  Plaintiff continued seeing Dr. Fu, who treated Plaintiff's complaints with pain

15  medications. AR 25-26, 413-16, 476-79. After a "significant gap in his treatment

16  history"—from August 2011 to February 2012—Plaintiff was seen by Dr. Amin on

17  his attorney's referral. AR 26, 496-511. Plaintiff then resumed regular treatment at

18  a San Bernardino County medical clinic and Arrowhead Regional Medical Center,

19  where he received knee injections and again declined surgery. AR 26, 564, 567,

20  574.

21  At his second hearing, Plaintiff testified that he was reluctant to have surgery

22  on his knee because his faith did not permit him to receive blood from a donor

23  source. AR 57-58. Plaintiff also testified, however, that his faith did permit him to

24  use his own blood. AR 58. Plaintiff stated that he was still weighing his options and

25  deciding whether he was satisfied with steroid injections every few months. AR 57.

26  While Plaintiff may claim that he is still considering more aggressive

27  treatment options, the ALJ could reasonably consider the fact that, to date, Plaintiff

28  has declined knee replacement surgery twice and has been relying primarily on the

conservative treatments of pain medication and cortisone injections. See Harris v. Colvin, 2016 U.S. Dist. LEXIS 66927, at *13 (E.D. Wash. May 20, 2016) ("The ALJ's statement that Plaintiff had been recommended only conservative treatment [i.e., physical therapy and cortisone injections] provides another clear and convincing reason for discounting Plaintiff's testimony in this case."); Medel v. Colvin, 2014 U.S. Dist. LEXIS 159933, at *27 (C.D. Cal. Nov. 13, 2014) (affirming ALJ's characterization of claimant's treatment as conservative where his medical records showed that he had been "prescribed only Vicodin and Tylenol for his allegedly debilitating low-back pain."); Morris v. Colvin, 2014 U.S. Dist. LEXIS 77782, at *12 (C.D. Cal. June 3, 2014) (finding that ALJ permissibly discounted plaintiff's credibility in part because plaintiff received conservative treatment consisting of use of TENS unit and Vicodin); Walter v. Astrue, 2011 U.S. Dist. LEXIS 38179, at *9 (C.D. Cal. Apr. 6, 2011) (finding that ALJ permissibly discounted plaintiff's credibility based on conservative treatment, which included Vicodin, physical therapy, and a single injection).

The ALJ did not err in finding that Plaintiff's history of conservative treatment is inconsistent with Plaintiff's testimony regarding the severity of his symptoms.

                    b.     Inconsistencies.

Plaintiff argues that the ALJ erred in finding his testimony inconsistent with his prior statements. JS at 31. Plaintiff contends that he testified that his condition has worsened between 2010 and the 2013 hearing, and that this testimony is not contradicted by the fact that Plaintiff may have had some periods of bearable pain. Id.

Prior inconsistent statements concerning a claimant's symptoms can be considered in determining whether the claimant's testimony regarding the severity of his symptoms is credible. Smolen, 80 F.2d at 1284. Here, the ALJ reasonably concluded that there were inconsistencies in Plaintiff's prior statements regarding

1   the severity of his pain. After the alleged onset date of his disability, Plaintiff made

2   two separate representations to doctors that his pain was unchanged or more

3   bearable than it was in the past. See AR 24, citing AR 399-401. These

4   representations contradict Plaintiff's testimony that his pain has consistently

5   worsened since his onset date.

6        Plaintiff's inconsistent statements were another valid reason for the ALJ to

7   discount Plaintiff's testimony.

8            c.    Presentation at Hearing.

9        Plaintiff argues that the ALJ's consideration of Plaintiff's ability to focus and

10   process questions without difficulty at the hearing was in error. JS at 31. Plaintiff

11   insists that "a two hour hearing with a representative by one's side can reasonably

12   justify [Plaintiff]'s presentation at the hearing" and that "two hours out of a 24-hour

13   day does not substantially justify the ALJ's determination." JS at 31-32.

14        The ALJ properly considered Plaintiff's presentation at the hearing in

15   assessing Plaintiff's credibility. See 20 C.F.R. § 404.1529(c)(3) ("We will consider

16   … observations by our employees and other persons"); Matney v. Sullivan, 981

17   F.2d 1016, 1020 (9th Cir. 1992) (when assessing credibility, the ALJ may consider

18   the claimant's "demeanor and appearance at the hearing").

19            d.    Daily Activities.

20        Plaintiff disputes the ALJ's conclusion that the "weak medical evidence" in

21   this case does not support the alleged extremely limited daily activities. Plaintiff

22   points to Dr. Biama's knee replacement recommendation as strong medical

23   evidence of a severely limiting impairment. JS at 31, citing AR 399. As noted

24   above, Plaintiff refused surgery on two separate occasions, indicating that

25   Plaintiff's daily activities were not as limited as he testified they were.

26        In fact, the ALJ acknowledged that Plaintiff's daily activities were "fairly

27   limited" but declined to consider them strong evidence in favor of finding Plaintiff

28   disabled because they could not be objectively verified by the medical evidence.

1   The ALJ also noted that while Plaintiff's daily activities were limited, those
2   complaints were generally outweighed by other factors. As discussed above, the
3   ALJ provided other clear and convincing reasons to discount Plaintiff's testimony
4   that are still valid regardless of Plaintiff's limited daily activities. Because one clear
5   and convincing reason is sufficient to discount a claimant's testimony, the ALJ did
6   not err in overlooking the limited nature of Plaintiff's reported daily activities.

7                    e.    Work History

8          Plaintiff contends that the ALJ erred in failing to credit Plaintiff's twenty-
9   five years of work history when determining his credibility. JS at 32-33. He argues
10  that the ALJ was required to consider Plaintiff's work history, pursuant to 20
11  C.F.R. § 404.1529(c)(3) (ALJ "will consider all of the evidence presented,
12  including information about your work record") and SSR 95-7p (ALJ's assessment
13  of credibility must be based on all of the evidence on record, including prior work
14  record).

15         The ALJ indicated that he did, in fact, consider all of the factors required by
16  SSR 96-7p. See AR 22. There is no requirement that the ALJ must articulate every
17  single factor that he considered. Further, Plaintiff's work history does not affect the
18  validity of the multiple other reasons the ALJ gave to explain why he did not find
19  Plaintiff's allegations fully credible. In other words, the ALJ could have recognized
20  Plaintiff's work record and still assessed him as less than fully credible.

21         The ALJ did not err in assessing Plaintiff's credibility.

22  //
23  //
24  //
25  //
26  //
27  //
28  //

**IV.**

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: December 21, 2016

*Karen E. Scott*

_____
KAREN E. SCOTT
United States Magistrate Judge